## Costenbader *against* Shuman.

One who obtains the possession of the property of another surreptitiously or otherwise wrongfully, cannot support an action of trespass against a third person, who, by virtue of a judgment and execution against the owner, levied and carried it away, although that judgment and execution may have been obtained from the defendant for the fraudulent purpose of hindering and delaying creditors, of whom the plaintiff in the action of trespass was one.

ERROR to the Common Pleas of *Columbia* county.

This was an action of trespass by Isaiah Shuman against Daniel Costenbader, William Kitchen and James Donaldson. The questions argued in this court arose out of the special pleading of the parties, which was very voluminous and not material to the merits of the cause as it was decided. The whole case is very fully stated in the opinion of the court. The cause was argued by

*Montgomery* and *Cooper*, for plaintiffs in error.
*Comly* and *Frick*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—This is an action of *trespass quare clausum fregit* for breaking and entering the plaintiffs' close, and taking and carrying away certain personal property, viz., two horses, &c. The defendants justify the alleged trespass by virtue of an execution on a judgment, Daniel Costenbader against Joseph Miller. The plaintiff replies, that the judgment was obtained by fraud and collusion between Miller, Costenbader and Donaldson. On this allegation the parties took issue, and on the trial the plaintiff, among other things, offered to prove fraud in obtaining the judgment, between Miller and Costenbader, omitting Donaldson. In admitting the evidence on this issue, the defendants allege there

[Costenbader v. Shuman.]

is error.  The material facts are these : Joseph Miller, who confessed the judgment to Costenbader, was indebted to the plaintiff, Isaiah Shuman, for money advanced, and also, as he alleged, as a surety for various debts.  Shuman, having understood that an execution was about to issue against Miller by one Dyer, proposed that Miller should assign all his property to him, (amongst which the property in dispute is included), in order to prevent Dyer from selling it on his execution, and, as he said, that the same might be saved for the use of Miller.  In pursuance of this plan, the parties came before Mr Baldy, a justice of the peace, and a judgment was confessed for $450.   At the same time, there was an assignment of the property, and by the advice of the justice the parties returned to the house of Miller, where Miller delivered the horses and the wagon, and the articles assigned to Shuman, who drove them to his own house, but immediately after returned them to Miller.   By this scheme, or in some other manner, they contrived to rid themselves of Dyer's execution.   The property, it appears, after the arrangement, remained as before, in the possession of Miller, and continued so until several days thereafter, when Shuman, without any previous consent, took them out of the possession of the servant or agent of Miller.   On this property so acquired a levy is made by the defendants, one of whom is the sheriff, another his deputy, and the third the plaintiff in the judgment on which the execution issued.   And the simple question is, was the property levied on, the property of Miller or Shuman ? For, if it was the goods of the former, it cannot admit of doubt that the defendants were justifiable in entering the plaintiff's premises and making the levy.   On the other hand, if the goods did not belong to him, the defendants are trespassers.  .If the goods were not Miller's, the possession of Shuman will entitle him to an action of trespass; but if Miller's, the goods are liable to execution as his property.

That the horses and wagon at one time belonged to Miller, is admitted.   Did, then, the arrangement or contract devest the right of Miller, and had Shuman a right to take a forcible or surreptitious possession of the goods ?   What was the arrangement, its objects and purposes ?   It was evidently made to hinder and defraud Dyer, and as respects him and the other creditors, the agreement was void, but as between themselves, it was good.   But the question recurs, what was the agreement ?   And if the uncontradicted testimony is to be believed, all the goods assigned were to remain in the possession and for the use of the assignor, he paying to the assignee the interest on the debt in the nature of a rent. It is not a sale, (such cannot be pretended to be the character of the bargain), for it is expressly agreed it shall be Miller's after he pays the debt due to Shuman.   This amounts to nothing more, as between themselves, than an assignment as a security for a debt, the assignor, by the agreement and with the assent of the

III. — 64                    2 s

[Costenbader v. Shuman.]

assignee, retaining possession as before the contract.   If this was the agreement, Shuman in undertaking to take possession contrary to the contract was manifestly a wrongdoer, and as such rendered himself liable to an action.   His possession being unjustly acquired, cannot be the foundation of an action either against the assignor or any person claiming under him.

But it is said (and this is the turning point of the cause,) that the judgment on which execution was issued, was for an amount greater than was due, and that the judgment is therefore fraudulent and void.   But admitting this to be so as against creditors, it is good between the parties; and it may be asked, in what does this concern Shuman, who, it must be remembered, comes into court as a wrongdoer, or one who has, without claim of right, taken possession of the goods of another ?   What can it avail him, that a person, from whom he has unlawfully and contrary to his contract, taken the property, chooses to confess judgment for an amount greater than he owes, or even when nothing is due? What has he to do with it, and why should he be permitted *to* inquire into the validity of the judgment ?   May *not* the owner assign his right, with or without consideration, without the consent of any person ? and in what way can it affect a wrongdoer, and what right has he to complain ?   It may be said, Shuman is a creditor; but it is only in his character of a wrongdoer the attempt is made to sustain the suit.   If this be a correct view of the case, it is very plain the cause has been tried on erroneous principles, and on an immaterial issue.   It follows, therefore, that there was error in admitting any evidence of fraud and collusion in obtaining the judgment.   It will be perceived that we do not put the case on the ground that the evidence offered does not support the issue, but upon the general principle that whether collusion or not, is entirely immaterial.   If the plaintiff had not the rightful possession, he cannot maintain the suit, and we cannot see how he is entitled to his action, even if the judgment should be without exception.   So that in whatever way it is received, the evidence has nothing to do with the controversy.   On the whole, we are of opinion that justice requires this case should be sent to another trial.   And we would recommend a withdrawal of the special pleas, which have only served to perplex the court and counsel, and that the cause be tried on the general issue.

It is obviously unnecessary, as the case stands, to trouble ourselves now with the other points which have been argued by the counsel.

Judgment reversed, and a *venire de novo* awarded.